UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

IN THE MATTER OF THE SEARCH OF **APPLE IPHONE, BLACK IN COLOR WITH A CLEAR PHONE CASE AND MEDICAL ID INFORMATION INDICATING OWNER AS DAMIEN REEVES** CURRENTLY LOCATED AT **900 NATURAL RESOURCE DRIVE CHARLOTTESVILLE, VA 22903**

Case No. 3:21-mj-00010

**AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE**

I, **Steven A. Scully** being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Special Agent with United States Postal Service, Office of Inspector General (USPS OIG), currently assigned to the Drug Enforcement Administration (DEA) and have been a federal agent since June 2012. Upon becoming a Special Agent, I completed twelve weeks of training at the Federal Law Enforcement Training Center in Glynco, Georgia. The training covered various aspects of federal law enforcement including the investigation of narcotics-related offenses. I have received instruction on conducting investigations and participated in investigations involving possession with intent to distribute and distribution of controlled substances. I have participated in multiple interdictions, controlled deliveries, seizures, and search warrants, which have resulted in criminal arrests and prosecutions. I have

participated in the application for and execution of multiple arrest and search warrants in the investigation of several narcotics and organized crime-related offenses resulting in the prosecution and conviction of individuals and the seizure of illegal drugs, weapons, stolen property, United States currency, and other evidence of criminal activity. Through my training and experience, I am familiar with the actions, habits, traits, methods, and terminology utilized by the traffickers and abusers of controlled dangerous substances. I have become familiar with the manner in which individuals and groups organize to conduct their operations, as well as means generally employed to avoid detection by law enforcement. At my current assignment with the DEA, I am involved in investigations that focus on an illegal drug trafficking organization operating in the metro-Richmond area.

3. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

**IDENTIFICATION OF THE DEVICE TO BE EXAMINED**

4. The property to be searched is an Apple iPhone, black in color with a clear phone case, hereinafter the **"DEVICE."** The Medical identification information on the DEVICE identifies "Damion Reeves" as the owner thereof. The DEVICE is currently located at 900 Natural Resource Dr., Charlottesville, VA 22903.

5. The applied-for warrant would authorize the forensic examination of the DEVICE for the purpose of identifying electronically stored data particularly described in Attachment B.

## RELEVANT STATUTORY PROVISIONS

6. **Possession with Intent to Distribute Cocaine and Methamphetamine**: 21 U.S.C. § 841 (a)(1).

7. **Conspiracy to Possess with the Intent to Distribute and Distribute Cocaine and Methamphetamine:** 21 U.S.C. §§ 846 and 841(a)(1).

## TECHNICAL TERMS

8. Based on my training and experience, I use the following technical terms to convey the following meanings:

a. **Wireless telephone**: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. **Digital camera**: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. **Portable media player**: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. **GPS**: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an

extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. **PDA**: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments, or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. **IP Address**: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address

so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g. **Internet**: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

9. Based on my training, experience, and research, and from consulting the manufacturer's advertisements and product technical specifications available online at www.apple.com I know that the DEVICE has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## PROBABLE CAUSE

10. On approximately March 17, 2021, Virginia State Police was notified by a confidential reliable source that a FedEx package containing as much as 3 kilograms of cocaine was to be delivered to DAMION DEMETRIUS REEVES **("REEVES")** at 809 Orangedale Ave., Charlottesville, Virginia, 22903. The confidential reliable source indicated that the package was being sent to REEVES from California. In response to this information, Virginia

State Police contacted FedEx security and asked them to be on the lookout for any packages addressed to the 809 Orangedale Ave., Charlottesville, Virginia, 22903 location.

11. On the morning of March 24, 2021, FedEx security notified the Virginia State Police that they had identified a package (hereinafter "Package A") that was addressed to "Charlottesville Police Sub09 Law Enforcement," 809 Orangedale Ave., Charlottesville, VA 22903. Package A had been shipped from San Diego, California and displayed FedEx Tracking Number 773242757987.

12. Based on the above information, Package A was seized by Virginia State Police on March 24, 2021 and a search warrant for Package A was obtained. Upon searching, law enforcement identified the contents of Package A as approximately 4.9 pounds of methamphetamine and approximately 1.4 kilograms of cocaine HCL.

13. Later that same day, law enforcement conducted a controlled delivery of Package A to the address identified thereon. At approximately 11:55 a.m. Package A was delivered to 809 Orangedale Ave., Charlottesville, Virginia 22903 by leaving the package on the front step of the residence and leaning against the front door. At approximately 12:05 p.m., law enforcement observed an unidentified adult male exit the 809 Orangedale Avenue residence and knock over Package A. The male proceeded to his vehicle with a small dark color binder inconsistent with the length, width and color of Package A and drove away from the residence. At this time Package A was out of view of law enforcement. Law enforcement believed the package had either been placed inside the residence by the unidentified male or pushed down the exterior side of the residence. At all times relevant, law enforcement had maintained visuals on the entire residence. At this time, law enforcement believed that counter-surveillance was

being conducted by possible suspect(s) and therefore remained in place and did not immediately confirm if Package A had been placed inside the residence.

14. At approximately 12:45 p.m. law enforcement believed counter-surveillance had ceased and therefore they drove past the residence and confirmed Package A was no longer sitting outside the residence. From the time the unidentified male left the residence and knocked over the package, to the time law enforcement confirmed the package was no longer outside the residence, no individual(s) approached the residence or left the residence in possession of Package A.

15. At approximately 12:52 p.m., law enforcement identified REEVES exiting the residence. REEVES proceeded to a black Range Rover, VIN SALSF25446A917436, and sat down in the driver's seat with the driver-side door to the black Range Rover left open. Law enforcement approached REEVES at the black Range Rover and asked him to exit the vehicle. Upon exiting the black Range Rover, REEVES placed the DEVICE on the driver seat of the vehicle. Law enforcement proceeded to detain REEVES. Law enforcement has confirmed through the vehicle's VIN that the Range Rover is registered to REEVES.

16. At approximately 1:00 p.m., a search warrant for 809 Orangedale Ave., Charlottesville, Virginia was served on the owner of the residence, Colenda Reeves, and executed. Package A was subsequently found by law enforcement hidden inside a storage space located in the "dead space" of the wall underneath a stairwell and only accessible by a door approximately 2-feet by 2-feet in size. In addition to seizing Package A, law enforcement seized two opened and empty FedEx packages that were similarly addressed to "Charlottesville Police Sub09 Law

Enforcement," 809 Orangedale Ave., Charlottesville, VA 22903. Both packages were shipped from San Diego, CA.

17. REEVES was arrested for Possession with Intent to Distribute cocaine HCL and methamphetamine. The black Range Rover was searched incident to arrest and, in addition to locating the DEVICE therein, law enforcement also recovered from the vehicle a scale, plastic bags and baking soda.

18. As law enforcement retrieved the DEVICE from the driver seat of the black Range Rover, a photograph of a FedEx receipt or notice with the package tracking number for Package A was displayed on the DEVICE and seen in plain view.

**ELECTRONIC STORAGE AND FORENSIC ANALYSIS**

19. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

20. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a

file (such as a paragraph that has been deleted from a word processing file). Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

b. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

c. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

d. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

e. I know that when an individual uses an electronic device to the individual's electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The electronic

device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The electronic device is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that an electronic device used to commit a crime of this type may contain: data that is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

21. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

22. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

**[continued next page]**

## CONCLUSION

23. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the DEVICE described in Attachment A to seek the items described in Attachment B.

## OATH

The information in this affidavit is true to the best of my knowledge and belief.

Respectfully submitted,

*s/Steven A. Scully*
Steven A. Scully
Special Agent
United States Postal Service
Office of Inspector General

Received by reliable electronic means and sworn and attested to by telephone on this 5th day of April 2021.

JOEL C. HOPPE
UNITED STATES MAGISTRATE JUDGE

**ATTACHMENT A**

The property to be searched is an Apple iPhone cell phone, black in color with a clear phone case ("DEVICE") in which the Medical identification information lists the owner as "Damion Reeves." The DEVICE is currently located at 900 Natural Resource Drive, Charlottesville, VA, 22903.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

# ATTACHMENT B

1. All records on the DEVICE described in Attachment A that relate to violations of 21 U.S.C. §§846 AND 841(a)(1), conspiracy to possess with intent to distribute and distribute controlled substances, and possession with intent to distribute controlled substances and involve **Damion Demetrius REEVES** since **September 1, 2020** including:

a. lists of customers and related identifying information;

b. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

c. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

d. any information recording **Damion Demetrius REEVES** schedule or travel from **September 1, 2020** to the present;

e. all bank records, checks, credit card bills, account information, and other financial records.

2. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3. Records evidencing the use of the Internet Protocol addresses to communicate with other co-conspirators including:

a. records of Internet Protocol addresses used;

b. records of Internet activity, including firewall logs, caches, browser history and cookies, “bookmarked” or “favorite” web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms “records” and “information” include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.